IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Herbert Smiley, | : | Case No. 1:10-CV-390 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING THE STATE OF |
| | : | OHIO AND THE OHIO |
| State of Ohio, *et al.*, | : | DEPARTMENT OF EDUCATION'S |
| | : | MOTION FOR JUDGMENT ON THE |
| Defendants. | : | PLEADINGS |
| | : | |

This matter is before the Court on Defendants the State of Ohio and the Ohio Department of Education's (collectively, the "State Defendants") Motion for Judgment on the Pleadings. (Doc. 10.) For the following reasons, the Court **GRANTS** the State Defendants' motion.

**I.  BACKGROUND**[1]

In 1979, Plaintiff Herbert Smiley ("Smiley") was convicted of a criminal offense. In 1985, Smiley began his employment with Defendant Great Oaks Institute of Technology and Career Development ("Great Oaks") as a custodian. Great Oaks is a joint vocational school district providing high school and adult career-technical education in Southwest Ohio.

In November 2007, the Ohio General Assembly enacted new legislation which expanded background-check statutes to require, among other things, criminal-background checks for administrative, or non-licensed, school-district employees. Former Ohio Revised Code

---

[1] Unless otherwise noted, the facts are taken from Plaintiff Herbert Smiley's First Amended Complaint (doc. 2) and are accepted as true for purposes of this motion.

1

("O.R.C.") § 3319.391, 2007 Sub.H.B. No. 190, eff. Nov. 14, 2007 ("H.B. 190").[2]  On or about October 28, 2008, Great Oaks notified Smiley that his 29-year-old conviction was discovered during a newly required background check.  Great Oaks further advised Smiley that former O.R.C. § 3319.391(C) required Great Oaks to terminate its employment relationship with Smiley because of the prior conviction.

      Former O.R.C. § 3319.391(C) provides:

> "Any person who is the subject of a criminal records check under this section and has been convicted of or pleaded guilty to any offense described in division (B)(1) of section 3319.39 of the Revised Code shall not be hired or shall be released from employment, as applicable, unless the person meets the rehabilitation standards adopted by the department under division (E) of that section."

Former O.R.C. § 3319.39(E) authorized the Ohio Department of Education ("ODE") to promulgate administrative rules specifying circumstances under which persons with certain convictions could be rehabilitated, allowing that person to remain employed with the school district.  Former Ohio Administrative Code ("O.A.C.") 3301-20-01[3] detailed how a non-licensed employee with a criminal conviction could demonstrate rehabilitation to relieve the person from employment disqualification with a school district.  However, no rehabilitation was available for employees convicted of an offense of violence, a theft offense, a drug abuse offense, or a

---

[2] O.R.C.§ 3319.391 was subsequently amended September 12, 2008 and January 1, 2010. When the Court refers to the "former" version of this statute, it is referring to the statute as amended September 12, 2008.  A copy of the former statute can found at doc. 14-1.

[3] O.A.C. 3301-20-01 was amended August 27, 2009.  The former version of O.A.C. 3301-20-01 can be found at doc. 14-2.

sexually-oriented offense.[4]  Former O.A.C. 3301-20-01(E).  Because Smiley was convicted of one of the enumerated nonrehabilitative criminal offenses, Great Oaks terminated Smiley's employment effective October 31, 2008.

Smiley filed suit on June 15, 2010, alleging that former O.R.C. § 3319.391 violates Title VII of the 1964 Civil Rights Act.  (Doc. 1.)  On October 8, 2010, Plaintiff filed the First Amended Complaint, which alleges that former O.R.C. § 3319.391 violates the Equal Protection Clause of the Fourteenth Amendment of United States Constitution, the Ex Post Facto Clause of the United States Constitution, the retroactivity clause of the Ohio Constitution, and Title VII.  (Doc. 2.)  Smiley exhausted all administrative remedies available to him prior to filing this suit.  On February 17, 2011, the State Defendants moved for judgment on the pleadings.  (Doc. 10.)

## II. STANDARD OF REVIEW

On a motion for judgment on the pleadings under Federal Civil Rule 12(c), the Court employs the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  *See Tucker v. Middleburg–Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).  Thus, "'[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'"  *Id*. (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

To withstand a dismissal motion, a complaint "does not need detailed factual

---

[4] These broad categories of offenses are defined in former O.A.C. 3301-20-01(A)(9)-(12).

allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

### III. ANALYSIS

At the outset, Smiley does not contest the dismissal of his race discrimination claim against the State Defendants under 42 U.S.C. § 1981 (part of Count I), his equal protection claims (Counts II and III), his ex post facto claim (Count IV), or his claim for violation of the Ohio Constitution's prohibition against retroactive legislation (Count V). (*See* doc. 14 at 2 n.1.) For purposes of the State Defendants' motion, all that remains is a claim for disparate impact under Title VII of the 1964 Civil Rights Act.

    A.    <u>Title VII Claim</u>

Smiley claims that the State Defendants' enactment of former O.R.C. § 3319.391(C) has had a disparate impact on African Americans. The State Defendants move for judgment on the pleadings, arguing that they cannot be liable to Smiley under Title VII because they are not Smiley's employer. In response, Smiley argues that although he is not directly employed by the

State Defendants, the State Defendants are subject to liability under Title VII under an "interference theory" of employment.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). By its terms, Title VII liability extends only to "employers." Title VII's definition of "employer" states only that an employer is a "person who is engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). The text ties the definition of an "employer" to the meaning of "employee," which Title VII defines as "an individual employed by an employer." 42 U.S.C. § 2000e(f). Neither term is clarified further in the statute and neither definition sheds light on whether Title VII requires that the plaintiff in a Title VII suit be an employee of the defendant.

As Smiley points out, several courts have held that Title VII does not require a formal employment relationship between the parties. Under the "interference" theory of employer liability, first articulated in *Sibley Memorial Hosp. v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973), a non-employer may be liable under Title VII if it interferes with or affects an individual's access to employment opportunities. In *Sibley*, the defendant was a hospital that ran a nursing office to assist placement of private nurses for patients who requested them. *Sibley*, 488 F.3d at 1339-40. These private nurses were employees of the patient, not the hospital. *Id*. at 1339. The plaintiff was a male private nurse who alleged that the hospital prevented him from being referred to female patients on numerous occasions. *Id*. at 1339-40. The hospital objected to the lack of an

5

employer-employee relationship but the court held that Title VII does not explicitly require a direct employment relationship. *Id*. at 1341-42. Specifically, the court reasoned that because § 2000e-2(a)(1) prohibits discrimination against "any individual" rather than "any employee," Title VII's protection is not restricted to former, present, and potential employees. *Id*. at 1341. This decision was based on the court's belief that Title VII's terms should be interpreted very broadly to achieve its non-discriminatory ends. *Id*.

As both Smiley and the State Defendants acknowledge, the Circuit Courts have split on whether and to what extent to adopt *Sibley's* interference theory.[5] The Sixth Circuit initially followed the *Sibley* approach in *Christopher v. Strouder Mem'l Hosp.*, 936 F.2d 870 (6th Cir. 1991). In *Christopher*, a nurse claimed that the defendant hospital retaliated against her by denying her staff privileges. *Christopher*, 936 F.2d at 872-73. Despite the fact that the nurse did not have an employer-employee relationship with the hospital, she was allowed to sue the hospital under Title VII because the hospital was in a position to interfere with the plaintiff's employment opportunities. *Id*. at 875. The *Christopher* court determined that the term "employee" is to be construed broadly, stating: "Title VII does not require a formal employment relationship between the plaintiff and the defendant. Rather, a plaintiff is protected if the defendant is one who significantly affects access of any individual to employment opportunities." *Id*. (quotation omitted).

Since *Christopher*, however, the viability of the interference theory has been called into

---

[5] *See Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 603-04 (9th Cir. 2000) (following *Sibley*); *Zaklama v. Mt. Sinai Med. Ctr.,* 842 F.2d 291, 294 (11th Cir. 1988) (following *Sibley*); *Lopez v. Massachusetts*, 588 F.3d 69, 89 (1st Cir. 2009) (rejecting *Sibley*); *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 373-76 (2d Cir. 2006) (disagreeing with *Sibley*).

question or rejected by many courts.[6] Most recently, the First Circuit outright rejected the interference theory in *Lopez v. Massachusetts*, 588 F.3d 69 (1st Cir. 2009). In *Lopez*, the court held that the terms "employee" and "employer" are restricted to their common law meanings for purposes of Title VII. *Id*. at 83. In support of its decision, the court cited a series of recent Supreme Court decisions which "established that when a statute contains the term 'employee' but does not define it, a court must presume that Congress has incorporated traditional agency law principles for identifying 'master-servant relationships.'" *Id*. (citing *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003); *Walters v. Metro. Educ. Enter., Inc.*, 519 U.S. 202, 211-12 (1997); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40 (1989)).[7] At common law, a court examines various factors focusing on the master's control over the servant to determine whether a worker is in an employment relationship with an employer. *Id*. at 85. By limiting the definition of "employee" to the common law agency test, the *Lopez* court stated, the Supreme Court rejected one of the chief rationales behind the interference test, *i.e.*, that a broader test for establishing the existence of an employment relationship would better serve the

---

[6] In fact, the D.C. Circuit has suggested that its decision in *Sibley* is limited to an "intermediary" between employees and services that might employ them. *Redd v. Summers*, 232 F.3d 933, 941 (D.C. Cir. 2000).

[7] The Supreme Court did not address the interference theory in *Clackamas, Walters, Darden* or *Reid.* In *Clackamas*, the Court used the common law agency test to determine whether shareholders were employees or employers under the Americans with Disabilities Act (ADA). In *Walters*, the Court applied the common law agency test to determine whether individuals were employees for purposes of Title VII. In *Darden*, the Court applied the common law agency test to determine whether a person was an independent contractor or an employee under ERISA. In *Reid*, the Court used the common law agency test to determine whether a person was an independent contractor or an employer for purposes of the Copyright Act.

remedial purposes of employment discrimination litigation. *Id*. at 89. Ultimately, the court rejected the interference theory as "entirely inconsistent with the use of the common law criteria the Supreme Court has identified."[8] *Id*. at 89.

While the Sixth Circuit has not squarely addressed the viability of the interference theory since it decided *Christopher*, the court recently suggested that adoption of the theory in *Christopher* might be inconsistent with more recent cases applying the common law agency test. *See Shah v. Deaconess Hosp.*, 355 F.3d 496, 500 (6th Cir. 2004). In *Shah*, the plaintiff-surgeon brought an action against the defendant-hospital following termination of his surgical privileges, alleging age and national origin discrimination in violation of the Age Discrimination in Employment Act (ADEA), Title VII, and Ohio's discrimination statute. *Shah*, 355 F.3d at 497-98. The court ultimately dismissed the plaintiff's claim, finding that the employment discrimination statutes did not apply because the plaintiff was not an employee of the hospital. *Id*. at 498. In doing so, the court clarified that the Sixth Circuit uses the common law agency test to determine whether a plaintiff is an employee for purposes of Title VII. *Id*. at 499. In passing, the court distinguished the facts of *Shah* from those of *Christopher* and ultimately called into question the viability of the interference theory, stating "one might question whether the reasoning in *Christopher* can be reconciled with our more recent cases employing the common law agency test." *Id*. at 500.

It is this Court's belief that the Sixth Circuit, if given the chance to reconsider, would narrow the scope of *Sibley* liability. Given the Sixth Circuit's use of the common law agency

---

[8] *See also Gulino*, 460 F.3d at 377-78 (applying the common law agency test to define an "employee" under Title VII because Supreme Court precedents "require adherence to common law principles of agency in Title VII cases.").

test, this Court believes that the Sixth Circuit would now require Smiley to demonstrate a common law employment relationship with the State Defendants before imposing liability under § 2000e-2(a).  Because the Amended Complaint is void of any facts suggesting the existence of a common law employment relationship between Smiley and the State Defendants, the State Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

**IV.     CONCLUSION**

For the foregoing reasons, the Court hereby **GRANTS** the State Defendants' Motion for Judgment on the Pleadings.  (Doc. 10.)

IT IS SO ORDERED.

                                                        ___s/Susan J. Dlott_____
                                                        Chief Judge Susan J. Dlott
                                                        United States District Court